## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUIS GONZALEZ and SONIA GONZALEZ, | |
| Plaintiffs, | |
| v. | No. 3:12 - CV - 1470 (CSH) |
| OPTION ONE MORTGAGE CORPORATION; AMERICAN HOME MORTGAGE SERVICING, INC.; DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Soundview Home Loan Trust 2005-OPT3 Asset-Backed Certificates, Series 2005 OPT3; BENJAMIN T. STASKIEWICZ, ESQ.; S. BRUCE FAIR, ESQ.; VALERIE NICOLE KLOECKER; and HUNT LEIBERT JACOBSON, P.C.; | JUNE 3, 2014 |
| Defendants. | |

### RULING ON DEFENDANTS' MOTIONS TO DISMISS

**HAIGHT, Senior District Judge**:

## I.    INTRODUCTION AND FACTUAL BACKGROUND

*Pro se* plaintiffs Luis Gonzalez and Sonia Gonzalez ("Plaintiffs") bring their self-styled "Human Rights Complaint" against defendant mortgage companies, bank, and counsel regarding a mortgage on Plaintiffs' property located  at 54 Abbe Road, East Windsor, Connecticut (the "East Windsor Property").  As described more fully below, pending before this Court are three motions by Defendants to dismiss Plaintiffs' Complaint.  *See* Doc. 4, 16, & 22.

In brief, on July 29, 2005, Plaintiff Luis Gonzalez signed a note (the "Note") promising to pay the lender, Option One Mortgage Corporation ("Option One"), $258,750.000.  Plaintiffs

executed a Mortgage in favor of Option One, relating to the East Windsor Property, to secure the Note.[1] Plaintiffs thereafter defaulted on this Mortgage Loan. As a result, Deutsche Bank National Trust Company ("Deutsche Bank"), as trustee and holder of the Note, accelerated the balance due.

On May 19, 2010, Deutsche Bank, by and through its counsel, Hunt Leibert Jacobsen, PC, initiated a foreclosure action against Plaintiffs in Connecticut Superior Court, Judicial District of Hartford at Hartford, *Deutsche Bank National Trust Co. v. Gonzalez*, No. HHD-CV-07-6001411-S. Defendant Deutsche Bank obtained a judgment of strict foreclosure in that action on July 28, 2011.[2] Doc. 23, Ex. A. On October 31, 2011, the state court issued an Execution of Ejectment. *Id.* (Doc. 135.00 on state court docket). A Certificate of Foreclosure was recorded on November 23, 2011. Doc. 23, Ex. B.

Plaintiffs thereafter commenced an action in state court, seeking to avoid foreclosure, regarding the Mortgage Loan on the East Windsor Property against Option One, American Home Mortgage Servicing, Inc. ("American Home Mortgage"), Deutsche Bank, the Hunt Leibert Jacobson law firm, and two individual attorneys in that firm, Benjamin Staskiewicz, and S. Bruce Fair. *See Gonzalez v. Option One Mortgage Corp.*, Case No. HHD-CV-11-5035882-S. In that action, alleging fraud and mistreatment with respect to the Mortgage Loan, Defendants Hunt Leibert Jacobson, PC, and Attorneys Benjamin Staskiewicz and S. Bruce Fair (collectively the "Hunt Leibert Defendants"),

---

[1] As Defendants suggest in their papers, the Court will address the Note and the Mortgage collectively as the "Mortgage Loan" in this Ruling. *See, e.g.*, Doc. 17, p. 2.

[2] Deutsche Bank had previously obtained a judgment of strict foreclosure in Connecticut Superior Court on June 12, 2008 (Case No. HHD-CV-07-6001411S), but then withdrew the action in an attempt to settle the case with Plaintiffs. *See* Doc. 4-2 (Strict Foreclosure, dated 6/12/2008) & Doc. 4-3 (withdrawal of action by Deutsche Bank, dated 7/9/2009). In May of 2010, Deutsche Bank reinitiated the action in Connecticut Superior Court (Case No. HHD-CV10-6011071-S) and obtained the present judgment of strict foreclosure.

filed motions to strike [Doc. 105] and for judgment [Doc. 107].  *See* Doc. 4-5 (docket sheet of state action).   On March 5, 2012, the court granted the motion to strike [Doc. 105.86] ; and on August 9, 2012, the court granted the motion for judgment in favor of the Hunt Leibert Defendants [Doc. 107.86]. Option One thereafter filed a motion to dismiss [Doc. 144], which was granted on September 10, 2013; and judgment of dismissal as to Option One entered on that date   [Doc. 144.87].  The state court ultimately entered a general "Judgment Without Trial" for defendants [Doc. 154.87, dated 9/10/2013].

On October 16, 2012, Plaintiffs brought the present claim in federal court against Defendants Option One, American Home Mortgage, Deutsche Bank, the Hunt Leibert Defendants, and Attorney Valerie Nicole Kloecker (currently known as Valerie N. Doble) (collectively "Defendants").[3] Plaintiffs' Complaint broadly includes, *inter alia*,  claims arising pursuant to "United Nations['] declaration of Indigenous Peoples Autonomy," "mortgage fraud and foreclosure," "conspiracy" of "national banks and loaning services . . . to commit fraud" against the Plaintiffs, denial of constitutional rights to "life[,] liberty[,] and the pursuit of happiness," and various "torts."  *See* Doc. 1, p. 1 (summarizing claims).  It is unclear what specific relief Plaintiffs seek. However, it would appear that, at the very least,  they seek to obtain relief from their obligations under the Mortgage Loan at issue and to avoid foreclosure on the East Windsor Property.

Pending before the Court are Defendants' three Motions to Dismiss Plaintiff's action pursuant

---

[3]   Attorney  Valerie  N.  Doble  entered  a   "special limited appearance"  as  counsel  in  this action on behalf of American Home Mortgage, Deutsche Bank, and herself for the sole purpose of moving to dismiss Plaintiffs' action.  Doc. 15 (filed 5/2/2013).

to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(5).  Doc. 4, 16 & 22.[4]  With respect

to the Hunt Leibert Defendants, they move to dismiss Plaintiffs' action pursuant to Rules 12(b)(1)

and 12(b)(6), arguing, respectively,  that the Court has no subject matter jurisdiction over this action

and the Complaint fails to state a claim upon with relief can be granted.  Doc. 4.  Similarly, the other

Defendants –  American Home Mortgage, Deutsche Bank,  Kloecker (currently Doble), and Option

One –  request the Court to dismiss Plaintiffs' action for lack of subject matter jurisdiction and

failure to state a claim upon which relief may be granted.  In addition, this group of Defendants

argues for dismissal due to insufficient service of process pursuant to Fed. R. Civ. P. 4 and 12(b)(5),

and thus lack of personal jurisdiction.  Because the three motions to dismiss substantively  assert

overlapping grounds for  dismissal, the Court will address and resolve all three motions herein.

## II.     STANDARDS OF REVIEW

### A.     Rule 12(b)(1) - lack of subject matter jurisdiction

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject

matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Lerner*

*v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d. Cir.2003), *cert. denied*, 540 U.S. 1012 (2003).  "In

deciding both types of motions, the Court  'must accept all factual allegations in the complaint as

true, and draw inferences from those allegations in the light most favorable to the plaintiff.'" *Hailey*

*v. Conn.*, No. 3:10–cv–1787 (VLB),  2011 WL 6209748, at *2 (D.Conn. Dec. 14, 2011) (quoting *In*

---

[4] The Hunt Leibert Defendants filed the initial Motion to Dismiss [Doc. 4]. Subsequently, Defendants Homeward Residential, Inc., formerly known as American Home Mortgage Servicing, Inc.; Deutsche Bank, as Trustee for Soundview Home Loan Trust 2005-OPT3, Asset-Backed Certificates, Series 2005 OPT 3; and Valerie Nicole Doble brought the second Motion to Dismiss, [Doc. 16].  Lastly, Defendant Option One moved to dismiss Plaintiffs' action on the same grounds as the second Motion to Dismiss [Doc. 22].

*re AIG Advisor Group Sec. Litig.*, 309 F. App'x 495, 497 (2d Cir. 2009)).

On a Rule 12(b)(1) motion, however, the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). *Lerner,* 318 F.3d at 128  (citing *Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994)).

"A case is properly dismissed for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."[5] *O& G Industries, Inc. v. Aon Risk Servs. Northeast, Inc.*, 922 F.Supp. 2d 257, 262 (D.Conn. 2013) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  *See also Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) ("If subject matter jurisdiction is lacking, the action must be dismissed."). "Without jurisdiction the court cannot proceed at all in any cause" because "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)).   Unlike personal jurisdiction, "subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Trust Co.,* 211 F.3d at 700.

In resolving a motion to dismiss for lack of subject matter jurisdiction, the court "must determine whether or not the factual predicate for subject matter exists." *Tilley v. Anixter Inc.*, 283 F.Supp.2d 729, 733 (D.Conn.2003) (citation omitted).   The court accepts as true all material

---

[5]  *See*  Fed. R. Civ. P. 12(b)(1) (permitting a defendant to assert by motion the defense of "lack of subject matter jurisdiction").

allegations in the complaint," but refrains from "drawing from the pleadings inferences favorable to the party asserting [subject matter jurisdiction]," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). *See also Norton v. Larney*, 266 U.S. 511, 515 (1925) ("It is quite true that the jurisdiction of a federal court must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings.").

Put simply, on a Rule 12(b)(1) motion to dismiss, the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the complaint. Moreover, the plaintiff may present proof of jurisdictional facts by affidavit or other competent evidence for the court to resolve such a motion. *See, e.g., Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing."); *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to and rely on competent evidence outside the pleadings."); *Rzayeva v. United States*, 492 F.Supp. 2d 60, 69 (D.Conn. 2007) ("In making a determination of a motion to dismiss under Rule 12(b)(1), a court is not limited to the face of the complaint, but may consider evidence, including affidavits submitted by the parties.") (citation and internal quotation marks omitted).

Pursuant to Article III of the Constitution, a federal court has limited jurisdiction. It may only exercise subject matter jurisdiction where either: (1) the plaintiff sets forth a colorable claim arising under the Constitution or federal statute, creating "federal question" jurisdiction, 28 U.S.C. § 1331; or (2) there is complete diversity of citizenship between plaintiff and all defendants and the amount

in controversy exceeds $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a)(1). *Strawbridge v. Curtiss*, 3 Cranch 267, 1806 WL 1213, at * 1 (February Term 1806). *See also Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir.2000) (delineating two categories of subject matter jurisdiction).[6] In order to survive a Rule 12(b)(1) motion for lack of subject matter jurisdiction, the plaintiff must therefore prove either the presence of a federal question or complete diversity of citizenship with all defendants and a minimum of $ 75,000 in controversy.[7]

## B.   Rule 12(b)(6) - failure to state a claim

"To survive a [Rule 12(b)(6) ] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570  (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Second Circuit has consistently adhered to the United States Supreme Court's seminal "plausibility" standard set forth in *Iqbal*.[8] *See, e.g., Nielsen v. Rabin*, 746 F.3d 58, 62  (2d Cir.

---

[6]   *See* 28 U.S.C. § 1331 ("The  district courts shall  have  original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States").

[7]   Even in the absence of a Rule 12(b)(1) motion, a federal court must determine with certainty that it has subject matter jurisdiction over a case pending before it and, if necessary, must do so *sua sponte*.  *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir.2006), *cert. denied*, 549 U.S. 1282 (2007).

[8]   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short

2014); *Krys v. Pigott,* Nos. 12–3575(L), 12–3586(C), __F.3d __, 2014 WL 1394940, at *9 (2d Cir. April 11, 2014); *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 118, 122 (2d Cir.2013); *O'Callaghan v. New York Stock Exchange*, No. 13–3370–cv, __ F. App'x __, 2014 WL 1422395, at *1 (2d Cir. April 15, 2014).

"[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'"[9] *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citation omitted). In ruling on a Rule 12(b)(6) motion, the court's duty is "to assess the legal feasibility of the complaint, [but] not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (citation and internal quotation marks omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds*, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). In fact, "it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. *Accord Nielsen,* 746 F.3d at 62-63 ("The plausibility standard is not akin to a probability requirement...." so that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very

---

of the line between possibility and plausibility of entitlement to relief." *Id*. (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks and brackets omitted).

[9]   Rule 8, Fed. R. Civ. P., specifies that a complaint must "contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The pleading standard set forth in Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

remote and unlikely.") (quoting *Twombly*, 550 U.S. 544) (internal quotations omitted).

"In addressing the sufficiency of a complaint [the court must]  accept as true all factual allegations and draw from them all reasonable inferences; but [the court is] not required to credit conclusory allegations or legal conclusions couched as factual . . .  allegations." *Nielsen*, 746 F.3d at 62 (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir.2013)). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Nielsen*, 2014 WL 552805, at *2 (quoting *Iqbal*, 556 U.S. at 678).

With respect to *pro se* litigants, "[w]hile pro se complaints must contain sufficient factual allegations to meet the plausibility standard," the Second Circuit "look[s]  for such allegations by affording the litigant 'special solicitude, interpreting the complaint to raise the strongest claims that it suggests.'" *O'Callaghan* , 2014 WL 1422395, at *1   (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009) and citing and quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).  Because "most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, [courts] must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than [it] would when reviewing a complaint submitted by counsel." *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) (citation and internal quotations omitted).

"[P]ro se litigants . . . cannot be expected to know all of the legal theories on which they might ultimately recover," and, therefore, "[i]t is enough that they allege that they were injured, and that their allegations can conceivably give rise to a viable claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir.2005).  Nonetheless, the Court need not engage in "rank speculations"  to manufacture a federal claim for *pro se* plaintiffs, *Ford v. New Britain Trans. Co.*, No. 3:03cv150 (MRK), 2005 WL 1785269, at *1 (D.Conn. July 26, 2005), *aff'd*, 239 F. App'x 670 (2d Cir. 2007); and thus, a court

may dismiss a complaint if it appears beyond doubt that no set of facts could be proven that would establish an entitlement to relief. *Weixel v. Bd. of Educ. of New York*, 287 F.3d 138, 145-46 (2d Cir. 2002).

### C.     Rule 12(b)(5) - insufficient service of process

"Under Rule 12(b)(5), a party may file a motion to dismiss due to insufficiency of service of process." *Carney v. Beracha*, No. 3:12–CV–00180 (SRU), __F.Supp. 2d__, 2014 WL 533727, at *2 (D.Conn. Feb. 10, 2014) (quoting *Rzayeva v. United States*, 492 F.Supp.2d 60, 74 (D.Conn.2007)). *See also Greene v. Wright*, 389 F.Supp.2d 416, 426 n.2 (D.Conn. 2005). "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service."[10] *Rzayeva*, 492 F.Supp 2d at 74 (citing *Cole v. Aetna Life & Cas.*, 70 F.Supp.2d 106, 110 (D.Conn.1999)). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Id.* (internal quotation marks omitted).[11]

---

[10]     Rule 4(c)(1), Fed. R. Civ. P., provides that "[i]n [g]eneral," "[a] summons must be served with a copy of the complaint;" "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m);" and the plaintiff "must furnish the necessary copies to the person who makes service." Moreover, the person who makes service may be "[a]ny person who is at least 18 years old and not a party" to the action. *Id.* (c)(2).

[11]     The Court also notes that "[s]ufficiency of service is a precondition for the court's exercise of jurisdiction over a party and, therefore, constitutes an interrelated ground on which to dismiss a case for lack of personal jurisdiction pursuant to Rule 12(b)(2)." *Carliell v. Am. Inv. Exchange, LLC*, No. 3:12-cv-1700 (JCH), 2013 WL 4782133, at *2 (D.Conn. Sept. 5, 2013). *See also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co ., Ltd.*, 484 U.S. 97, 104 (1987); *Davis v. Mara*, 587 F.Supp.2d 422, 424 (D.Conn. 2008).

III.     **DISCUSSION**

    A.     **Rule 12(b)(1) - Lack of Subject Matter Jurisdiction**

        1.     **No Diversity of Citizenship**

In the case at bar, all Defendants move this Court to dismiss Plaintiff's Complaint on the grounds that Plaintiffs have not and cannot meet their burden to demonstrate subject matter jurisdiction.  Doc. 4, 16, & 22.  As stated *supra*, the basic statutory grants of subject matter jurisdiction are embodied in  28 U.S.C. §§ 1331 and 1332.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006).  A federal court may thus exert subject matter jurisdiction over claims in which (1) there is complete "diversity of citizenship" between each plaintiff and all defendants and a minimum of $75,000 in controversy,  28 U.S.C. § 1332(a), and/or if  (2) there is a "federal question" in that a colorable claim arises under the "Constitution, laws or treaties of the United States,"  28 U.S.C. § 1331.[12]

First, in the pending Motions to Dismiss,  Defendants point out that there is no diversity of citizenship in this action.  Not only did Plaintiffs fail to allege sufficient facts to prove the parties' citizenship, but were Plaintiffs to attempt to do so, diversity would still not be present.  Defendants represent that Plaintiffs and Defendants Hunt Leibert Jacobson, P.C., Benjamin T. Staskiewicz, and S. Bruce Fair are, and most importantly were at the commencement of the action, citizens of Connecticut.[13]

---

    [12]  The Court also notes that a federal court may exercise subject matter jurisdiction over a claim brought against the federal government, but the federal government is not a party to this action.  *See* 28 U.S.C. § 1346.

    [13]  "In an action in which jurisdiction is premised on diversity of citizenship, diversity must exist at the time the action is commenced."  *Universal Licensing Corp. v. Paola del Lungo S.p.A.,* 293 F.3d 579, 581 (2d Cir. 2002).  *See also Durant, Nichols, Houston, Hodgson &*

Plaintiffs state in their Complaint that they are "[d]omicile[d] at indigenous lands America Connecticut Republic" and are "undisputed owner[s] of 54 Abbe Road, East Windsor, Connecticut Republic." Doc. 1, p. 2.  For diversity purposes, an individual's citizenship is determined by his or her *domicile*, as opposed to residence, *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); and "[i]n general, the domicile of an individual is his true, fixed and permanent home and place of habitation" – *i.e,* "the place to which, whenever he is absent, he has the intention of returning." *Martinez v. Bynum*, 461 U.S. 321, 331 (1983).   Because Plaintiffs were, in their words, "domiciled" in Connecticut at the commencement of their action, they are citizens of Connecticut.

With respect to corporate Defendant Hunt Leibert Jacobson, P.C., pursuant  to  28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *See also Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006).  The Court takes judicial notice that Hunt Leibert  Jacobson, P.C.  is a professional corporation with its principal and sole place of business located at 50 Weston Street, Hartford, Connecticut.  Thus, based on its principal place of business, Hunt Leibert Jacobson is a citizen of Connecticut, as well as a citizen of its state(s) of incorporation.[14]

With respect to Defendants Benjamin T. Staskiewicz, and S. Bruce Fair, individual attorneys, Defendants represent that they are, and were upon the filing date of Plaintiffs' action, "domiciled" in Connecticut.  Doc. 17, p. 6; Doc. 23, p. 6.  As set forth *supra*, they are thus citizens of

---

*Cortese–Costa P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir. 2009) (to determine diversity jurisdiction "it must be determined whether at the time the present action was commenced there was diversity jurisdiction").

[14]   Hunt Leibert  Jacobson  has  not  identified its state(s)  of  incorporation for the Court. However, the other Defendants in the action have represented, without dispute, that Hunt Leibert Jacobson is a citizen of Connecticut.  Doc. 17, p. 6; Doc. 23, p. 6.

Connecticut.

Where the citizenship of Plaintiffs and one or more Defendants is the same, there can be no subject matter jurisdiction based on diversity of citizenship, 18 U.S.C. § 1332(a). *See, e.g.*, *St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80  (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.")  (citing  *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978)).   Reading *pro se* Plaintiffs' language liberally, Plaintiffs alleged that they were domiciled in Connecticut when they filed their Complaint. Accepting the factual allegations in the Complaint as true, Plaintiffs have failed to establish diversity of citizenship. Moreover, in the present circumstances, any opportunity to replead, if given, would be futile:  Plaintiffs would be unable demonstrate diversity of citizenship because Plaintiffs and two or more Defendants were citizens of Connecticut at the inception of Plaintiff's action.  In the absence of complete diversity between Plaintiffs and Defendants, there is no subject matter jurisdiction based on diversity of citizenship.[15]

### 2.   No Federal Question Implicated

Second, Defendants assert, that there is no "federal question" jurisdiction. *See, e.g.*, Doc. 17, p.6.; Doc. 23, p. 6.  Specifically, Defendants argue that although Plaintiffs refer to various federal statutes, including the Federal Tort Claims Act, 42 U.S.C. § 1983, and 28 U.S.C.§ 1343(a)(3), "review of the Complaint demonstrates that Plaintiffs' reference to these federal statutes is made solely for purpose of obtaining jurisdiction, as the Complaint does not set forth a viable cause of

---

[15]   The Court need not address the  jurisdictional amount in controversy necessary for diversity because Plaintiffs and certain Defendants are citizens of the same state, Connecticut.  Given the value of the property at issue in the Mortgage Loan, however,  it is likely that, as Plaintiffs contend, "the amount in controversy exceeds $75,000." *See* Doc. 1, p. 1.

action against Homeward, Deutsche Bank as Trustee or Attorney Doble under the United States Constitution or other federal law."  Doc. 17, p. 6.  Therefore, Defendants reason, "Plaintiffs' reference to these federal statutes is made solely for purpose[s] of obtaining jurisdiction."  Doc. 23, p. 6.  As Defendants conclude, when a complaint states a cause of action under federal law that is "clearly . . . immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous," there is no federal question jurisdiction.  *Id.* (quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 701 (2d Cir. 2000)).

In deciding a Rule 12(b)(1) motion, the Court "must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff."  *In re AIG Advisor Group Sec. Litig.*, 309 F. App'x at 497 (quoting *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).  The Court has carefully and liberally reviewed both Plaintiffs' Complaint [Doc. 1] and "Complaint Revised" or "Affidavit Substantiating Plaintiffs' Complaint Standing" [Doc. 25], which was submitted in response to Defendants' motions to dismiss.  Accepting all factual allegations in the Complaint and proposed "Complaint Revised" as true, and drawing inferences from those allegations in the light most favorable to the Plaintiffs, neither document sets forth any comprehensible federal claim.[16] Granted, Plaintiffs reference federal statutes, including 42 U.S.C. § 1983, and the Constitution.[17] However, despite exercising the utmost

---

[16]   In reviewing the Complaint for any plausible claims under *Iqbal*, the Court has refrained from impugning Plaintiffs' motives for citing federal statutes (*e.g.*, to simply create federal subject matter jurisdiction).

[17]   For example, Plaintiffs alleged that "NEGLIGENCE of a federal employee . . . is authorized by [the] FEDERAL TORTS CLAIMS ACT of 1946," citing 28 U.S.C. §§ 1346(b) and 2674).  This statement is both incorrect and inapposite to their mortgage-based claim.  Also, Plaintiffs quote Article 4, section 4 of the Constitution, the Guaranty Clause, which guarantees a republican form of government.  *See* U.S. Const., Art. IV, § 4 (" The United States shall guarantee

leniency in construing the Complaint, as this Court is required to do when plaintiffs are *pro se*, *Platsky v. C.I.A.*, 953 F.2d 26, 28 (2d Cir.1991), Plaintiffs have failed to set forth any relevant facts giving rise to either federal statutory or constitutional claims.  The Court thus finds no basis upon which to exercise federal question jurisdiction.

Although courts hold *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), *pro se* litigants must establish subject matter jurisdiction to avoid dismissal. *See, e.g.*, *Burke v. State of Connecticut Judge Patchen*, No. 3:08mc118(WIG), 2008 WL 1883923, at *2 (D.Conn. April 28, 2008) (dismissing *pro se* complaint for lack of subject matter jurisdiction).  Because Plaintiffs have not demonstrated any viable basis upon which this Court may exercise subject matter jurisdiction, this Court has no choice but to dismiss this case.

**3**.    **Rooker-Feldman Doctrine**

Even if there had been diversity of citizenship or a federal question present, the Court would still lack subject matter jurisdiction over this matter pursuant to the Rooker-Feldman doctrine.  "The Rooker–Feldman doctrine provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts." *Grim v. Baker*, No. 13–1189–cv, __F. App'x__, 2014 WL 349977, at *1 (2d Cir. Feb. 3, 2014) (citing *D.C. Court of*

---

to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence.").  Not only has no State been invaded or subjected to domestic violence, "complaints based on that clause have been held to present political questions that are nonjusticiable." *Baker v. Carr*, 369 U.S. 186, 209 (1962).  *See also, e.g., Kirk v. Boehm*, 216 F.Supp. 952, 953(D.C. Pa. 1963) (dismissing claims under Article IV, section 4 because "plaintiff's complaint raises a nonjusticiable political question and must be dismissed."), *aff'd*, 376 U.S. 512 (1964), *reh'g denied*, 377 U.S. 920 (1964).

15

*Appeals v. Feldman*, 460 U.S. 462, 482–83 (1983) ("a United States District Court has no authority to review final judgments of a state court in judicial proceedings"); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–16 (1923) ("no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors")). "The Supreme Court has clarified that the doctrine is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Grim*, 2014 WL 349977, at *1 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (internal quotation marks omitted)).

As the Second Circuit has articulated, "Rooker–Feldman directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir.2010). *Accord Remy v. New York State Dep't of Taxation and Finance*, 507 F. App'x 16, 18 (2d Cir. 2013). Moreover, "the applicability of the Rooker–Feldman doctrine turns not on the similarity between a party's state-court and federal-court claims . . . but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court." *McKithen*, 481 F.3d at 97-98.

"Even where a plaintiff alleges that a state court judgment was procured by fraud, Rooker–Feldman will divest the federal court of jurisdiction." *Astoria Federal Sav. & Loan Ass'n v. Arcamone,* No. 3:12-cv-230 (WWE), 2012 WL 4355550, at *2 (D.Conn. Sept. 18, 2012) (citing *Done v. Wells Fargo Bank, N.A.*, No. 08–CV–3040 (JFB)(ETB), 2009 WL 2959619, *3 n.6

16

(E.D.N.Y. Sept. 14, 2009)). *See also Smith v. Wayne Weinberger P.C.,* 994 F.Supp. 418, 423 (E.D.N.Y.1998) ("The fact that the plaintiff alleges that the State Court judgment was procured by fraud does not remove his claims from the ambit of Rooker–Feldman.").

In particular, with respect to state court judgments of foreclosure, "Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker–Feldman doctrine." *Gunn v. Ambac Assur. Corp.*, No. 11 Civ. 5497(PAC)(JLC), 2012 WL 2401649, at *12 (S.D.N.Y. June 26, 2012)(collecting cases), *report and recommendation adopted*, 2012 WL 3188849 (S.D.N.Y. Aug. 6, 2012). *See also Swiatkowski v. Bank of America, NT & SA,* 103 F. App'x 431, 432 (2d Cir. 2004)  (affirming district court's "holding that under the Rooker–Feldman doctrine, the [district] court lacked subject matter jurisdiction: even reading the complaint liberally, . . . [plaintiffs'] lawsuit was effectively seeking to re-litigate a judgment of foreclosure entered against them by the state court"); *Billie v. Aurigremma*, No. 3:13–cv–1432 (JBA), 2013 WL 6331358, at *2 (D.Conn. Dec. 5, 2013) ("any claims contesting the validity of the state court foreclosure judgment are precluded by the Rooker–Feldman doctrine"); *Aluria v. Jurgelas*, No. 3:12–cv–1443 (WWE), 2013 WL 2286051, at *1 (D.Conn. May 23, 2013) ("Plaintiff's action invites this court to review and reject the judgment rendered in the foreclosure action prior to plaintiff's commencement of this action;" and  "[t]hus, plaintiff[']'s challenge to a judgment of foreclosure issued by the state superior court satisfies the Rooker–Feldman factors, and the Court lacks subject matter jurisdiction to resolve plaintiff's request for relief."); *Astoria Federal Sav. & Loan Ass'n*, 2012 WL 4355550, at *2  (where plaintiff sought "an injunction to prevent the subject property from being 'stolen' from him" and "an order to void the [state court's] foreclosure orders," his "challenge to a judgment of foreclosure issued by the state superior court satisfie[d] the

17

Rooker–Feldman factors, and the Court lack[ed] subject matter jurisdiction to resolve plaintiff's request for relief"); *Vossbrink v. Accredited Home Lenders, Inc.*, No. 3:11–cv–1312 (WWE), 2012 WL 2952374, at * 1 (D.Conn. July 19, 2012) ("Here, plaintiff's motion for issuance of a temporary restraining order or preliminary injunction challenges a judgment of foreclosure issued by the state superior court;" "[t]hus, the Rooker–Feldman factors apply and the Court lacks subject matter jurisdiction to resolve plaintiff's request for relief."); *Smith v. Wayne Weinberger P.C.*, 994 F.Supp. 418, 423 (E.D.N.Y.1998) (in action where plaintiff alleged that state court default judgment in a foreclosure proceeding was procured by fraud, court dismissed the plaintiff's action as "in contravention of Rooker–Feldman" because  the conversion claims were "merely a thinly-veiled effort to invalidate the State Court's foreclosure judgment").

In the case at bar, all four Rooker-Feldman factors are present.  First, the Plaintiffs clearly lost in state court.  Plaintiffs initially lost when attempting to defend against foreclosure in the Connecticut state action of *Deutsche Bank National Trust Co. v. Gonzalez*, HHD-CV10-6011071-S (Conn. Super. Ct. 2010).  *See* Doc. 17-1, p. 2-5 (docket sheet reflecting, *inter alia*,  "Judgment of Strict Foreclosure" with respect to Plaintiffs'  East Windsor property, 7/18/2011; and "Execution of Ejectment Issued," 10/31/2011).

Plaintiffs thereafter lost again when they sued in Connecticut Superior Court, Judicial District of Hartford, to obtain relief from their mortgage obligations and to avoid foreclosure of the East Windsor Property.  *See Gonzalez v. Option One Mortgage*, HHD-CV11-5035882-S (Conn. Super. Ct. 2011); *see also* Doc. 17-1, p. 13-16.   In that second action, upon motion by the Hunt-Leibert Defendants, the state court struck Plaintiffs' complaint in its entirety and entered judgment in their favor on August 9, 2012.  *See*, *e.g.,*  Doc. 17-1, p. 15 (docket sheet of state court action, reflecting,

18

*inter alia*, Order [Doc. 107.86] entering "Judgment pursuant to Practice Book § 10-44 disposing of this matter . . . in favor of Defendants, Hunt Leibert Jacobson, PC; Benjamin T. Staskiewicz, Esq.; and S. Bruce Fair, Esq.," dated 8/9/2012).   The court subsequently entered a general judgment without trial in favor of the remaining defendants on September 10, 2013.[18]

Second, in the case at bar, the Plaintiffs complain of the injuries caused by the state court judgments. Specifically, Plaintiffs allege that they will be  deprived of their property at 54 Abbe Road, East Windsor, Connecticut, as "victim[s] of predatory lending, deceptive practices, unfair trade and sales" by Defendants and the state court's entry of a judgment of strict foreclosure. Doc. 1, p. 3.  In their Complaint, they thus "request the following relief remedy and tort: Discharge of the account, loan."  *Id.*, p. 5.

Third, in challenging the state court's judgments, including foreclosure, the Plaintiffs invite this Court to review and reject those judgments, which were clearly unfavorable to them. In federal court,  Plaintiffs present the same issues – the validity of the Mortgage Loan and opposition to foreclosure on the East Windsor Property – that they raised, or could have raised, in their state court actions.  Where "the issues raised in a plaintiff's complaint are inextricably intertwined with a state court judgment" so that "the federal claim would succeed only if the state court wrongly decided the issue," the Rooker-Feldman factors are present.[19]  *See, e.g.*, *Barnett v. Conn. Light & Power Co.,* 900

---

[18]    As in the present federal action, the defendants in the state court action included Option One Mortgage Corporation; American Home Mortgage Servicing, Inc.; Deutsche Bank National Trust Company; Benjamin T. Staskiewicz, Esq.; S. Bruce Fair, Esq.; and Hunt Leibert Jacobson, PC.  Attorney Doble was defense counsel for Deutsche Bank in that action.

[19]  "In the Rooker–Feldman doctrine, the Supreme Court's use of 'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the Rooker–Feldman doctrine if it would be barred under the principles of

F.Supp. 2d 224, 241 (D.Conn. 2012) (quoting *Dockery v. Cullen & Dykman*, 90 F.Supp.2d 233, 236 (E.D.N.Y. 2000), *aff'd*, 2 F. App'x 78 (2d Cir. 2001)); *Rene v. Citibank*, N.A., 32 F.Supp.2d 539, 543 (E.D.N.Y.1999) (same).

With respect to the fourth Rooker-Feldman factor, entry of the state court judgment prior to Plaintiffs' initiation of the federal lawsuit, Plaintiffs commenced their action in federal court on October 16, 2012. The state court judgment of foreclosure preceded their federal action. *See Deutsche Bank National Trust Co. v. Gonzalez*, HHD-CV10-6011071-S (Conn. Super. Ct. 2010) ("Judgment of Strict Foreclosure," 7/28/2011, and "Execution of Ejectment Issued," 10/31/2011).[20] The state court clarified that the foreclosure judgment was final when later denying a motion to open judgment by Luis Gonzalez's present co-plaintiff and wife, Sonia Urdinola (a/k/a Gonzalez).[21] The

_____

preclusion." *Weiss v. Weiss*, 375 F.Supp. 2d 10, 18 (D.Conn. 2005) (citation and internal quotation marks omitted). "Stated another way, a federal claim is 'inextricably intertwined' with the state-court judgment if the relief sought may be granted only on the federal court's finding that the state court determined the issues before it erroneously." *Weiss*, 375 F.Supp. 2d at 18 (quoting *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 25 (1987) (plurality opinion)).

[20] The Court notes that Plaintiffs' later attempt to avoid foreclosure in Connecticut Superior Court, Judicial District of Hartford, was also unsuccessful. *See Gonzalez v. Option One Mortgage*, HHD-CV11-5035882-S (Conn. Super. Ct. 2011).

[21] In *Deutsche Bank v. Gonzalez*, in denying plaintiff Sonia Urdinola's motion to open judgment of strict foreclosure, the state court clarified that it considered the judgment final, as follows:

> *The court entered a judgment of strict foreclosure in this matter on July 18, 2011, and title vested in the plaintiff on September 29, 2011.* The defendant, Sonia Urdinola, entered her appearance in the case on March 3, 2014, and filed a motion to open judgment arguing that the judgment should be opened because the plaintiff did not file a "Certification of Compliance with Foreclosure Procedures" with the clerk, because the plaintiff lacks standing as the real party in interest to bring this action, and she also supplies information showing that she and the the [sic] defendant, Luis Gonzales, have health problems. Due to the fact that the motion is so late, the court, ordinarily, has no jurisdiction to grant it. General Statutes § 49-15;

docket in that action also reflects that Deutsche Bank provided the requisite affidavit of debt and foreclosure worksheet [Doc. 124, 125] to enable the court to make the necessary calculations of debt and issue an Execution of Ejectment [Doc. 135].    Under Connecticut law, "a judgment of foreclosure constitutes an appealable final judgment when the court has determined the method of foreclosure and the amount of the debt." *Moran v. Morneau*, 129 Conn.App. 349, 356 (2011) (quoting *Danzig v. PDPA, Inc.*, 125 Conn.App. 254, 261 (2010), *cert. denied*, 300 Conn. 920 (2011)).

Moreover, the second state court action, brought by Plaintiffs against all Defendants herein, excluding Doble, gave rise to a second state court judgment which is inextricably linked with the issues presented to this Court.  That second action was dismissed and judgment entered in favor of the Hunt Leibert Defendants on August 9, 2012, that is,  prior to the October 16, 2012 filing of Plaintiffs' federal action.  Although that state action remained pending against other defendants  in October of 2012, there had already been a final judgment of dismissal  as to the Hunt Leibert

---

> *Thompson Gardens West Condominium Ass'n, Inc. v. Masto*, 140 Conn. App. 271, (2013). There are exceptions in cases where the court obviously lacked subject matter jurisdiction, *Argent Mortgage Co., LLC v. Huertas*, 288 Conn. 568, 576 (2008), or where the equities are so strong that "the principle of protection of finality of judgments must give way to the principle of fairness and equity." (Citation omitted; internal quotation marks omitted.) *Citibank v. Lindland*, 131 Conn. App. 653, 661, (2011), *aff'd in part and rev'd in part on other grounds*, 310 Conn. 147 (2013). This is not such a case. First, there is no "Certification of Compliance with Foreclosure Procedures" that must be filed in this action. . . .  Second, the issue of standing was already raised in this case. . . . The issue was resolved in favor of the plaintiff on March 28, 2011. Doc. No. 114.86. There is no justification to relitigate the point. *See Urban Redevelopment Commission v. Katsetos*, 86 Conn. App. 236, 243 (2004), *cert. denied*, 272 Conn. 919 (2005). And, current health problems are not justification to open a judgment entered over two and a half years ago. All other of defendant's arguments have no merit. Accordingly, the motion is dismissed.

Doc. 145.00 (Order, dated 3/20/2014) (emphasis added) (parallel citations omitted).

Defendants, an interlocutory ruling that was not appealed by Plaintiffs within the requisite time to appeal.[22]

In general, "Rooker–Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009).  However, the Second Circuit has held that the Rooker–Feldman doctrine applies not only to final orders, such as the entry of strict foreclosure, but also to interlocutory decisions, such as the dismissal of the case against the Hunt Leibert Defendants. *Id.* (noting that the "doctrine applied both to final state court judgments and to interlocutory state court orders"); *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 138 (2d Cir. 1997) ("It cannot be the meaning of Rooker–Feldman that, while the inferior federal courts are barred from reviewing final decisions of state courts, they are free to review interlocutory orders.") (citation omitted); *Gentner v. Shulman,* 55 F.3d 87, 89 (2d Cir.1995) ( "Under [the Rooker-Feldman] doctrine, federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in  nature"); *Media Group, Inc. v. Tuppatsch*, 298 F.Supp. 2d 235, 248 n.12 (D.Conn. 2003) ("Second Circuit has held that the Rooker-Feldman doctrine applies to interlocutory orders"); *Shelley v. Brandveen*, No. 06–CV–1289 (NGG) (AKT), 2012 WL 3903472, at *3  (E.D.N.Y. Sept. 6,  2012)  ("The jurisdictional bar, called the 'Rooker–Feldman doctrine,' applies not only to final judgments, but also to interlocutory orders.").

---

[22] Plaintiffs  neither  appealed  the decision to dismiss the action against the Hunt Leibert Defendants nor preserved the right to appeal by filing a notice of intent to appeal, pursuant to Conn. R. App. P. § 61-5.  Doc. 4-1, p. 2.   Section 61-5(a)(2) provides in pertinent part that a notice of intent to appeal must be filed "when the deferred appeal is to be taken from a judgment that disposes of only part of a complaint . . . .[which]  disposes of all causes of action in that pleading brought by or against a particular party or parties."  Under such circumstances, the appeal must be filed "within the appeal period provided by statute, or, if there is no applicable statutory appeal period, within twenty days after issuance of notice of the judgment . . ."  *Id.*  Because Plaintiffs failed to file the required notice to appeal, the judgment as to the Hunt Leibert Defendants is final.

In sum, as to the foreclosure action, the state court ruled that the judgment of strict foreclosure in favor of Deutsche Bank was final.  Attempts to reopen that judgment have been denied.  Furthermore, with respect to Plaintiffs' subsequent action in state court to avoid foreclosure, although the interlocutory dismissal pertained only to the Hunt Leibert Defendants, the issues in that state action were inextricably intertwined with the issues now presented in the federal action. Because the Rooker–Feldman applies to both final and interlocutory orders, this Court lacks subject matter jurisdiction over Plaintiffs' federal action.

Furthermore, even though Plaintiffs allege that the state court judgments resulted from fraud, Rooker-Feldman still bars their federal claims.[23]  *See, e.g., Astoria Federal Sav. & Loan Ass'n*, 2012 WL 4355550, at *2  ("Even where a plaintiff alleges that a state court judgment was procured by fraud, Rooker–Feldman will divest the federal court of jurisdiction.")  (citing *Done*, 2009 WL 2959619, *3 n. 6).  Thus, "even if the state court judgment was wrongly procured, it is effective and conclusive until it is modified or reversed in the appropriate State appellate or collateral proceeding." *Simpson v. Putnam County Nat'l Bank of Carmel*, 20 F.Supp.2d. 630, 633 (S.D.N.Y.1998) (citation omitted).

Because  Plaintiffs seek review and reversal of prior unfavorable state court judgements in a later federal action, this Court lacks subject matter jurisdiction  pursuant to the Rooker-Feldman doctrine.  *See, e.g., Aluria*, 2013 WL 2286051, at *1 ("Plaintiff's action invites this court to review and reject the judgment rendered in the foreclosure action prior to plaintiff's commencement of this

---

[23] In their Complaint [Doc. 1], Plaintiffs allege "[m]ortgage fraud" related to "foreclosure" and "conspiracy to commit fraud" by "banks and loaning services."  Doc. 1, p. 4 ("Claim 1").  They also "allege[ ] judicial misconduct [by the state court judges], violation of code of conduct, conflict of interest whereas the court and its officials in individual and full capacity."  *Id.*, p. 5.

action:" and  "[t]hus, plaintiff's challenge to a judgment of foreclosure issued by the state superior court satisfies the Rooker–Feldman factors, and the Court lacks subject matter jurisdiction to resolve plaintiff's request for relief.").  Construing the language of the Complaint in its broadest terms, there is a clear relationship between the state court judgments and the injury  Plaintiffs seek to redress in federal court.  Plaintiffs lost in the foreclosure action and lost against the Hunt Leibert Defendants in Plaintiff's state  action to attempt to avoid foreclosure.  Plaintiffs may not now re-litigate the validity of the Mortgage Loan in federal court.

### B.      Rule 12(b)(6) - Failure to State a Claim upon Which Relief May Be Granted

Having found that this Court lacks subject matter jurisdiction, the Court need not address, much less rule on, whether the Complaint states any viable claims for purposes of Rules 8 and 12(b)(6), Fed. R. Civ. P.[24]   However, as an alternative basis for dismissal (*i.e.*, if subject matter jurisdiction were deemed to exist), the Court finds that  the allegations in the Complaint fail to set forth any claims upon which relief could be granted.[25]  *See Gherardi v. New York*, 161 F. App'x 60, 61 (2d Cir. 2005) ("An alternative holding may be considered conclusive in a subsequent proceeding where, as here, the litigants had the incentive and opportunity to address the issue, and the issue was carefully considered by the court.").

Because the Plaintiffs are *pro se* litigants, the Court must "construe the complaint liberally,

---

[24]   Rule 8(a)(2) mandates that "a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) permits a party to assert by motion the defense of "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6).

[25]   For example, with respect to Rooker-Feldman, to the extent that Plaintiffs have attempted to  assert any causes of action that are independent of the prior state court judgments, those allegations fail to state any claim for which relief could be granted.

accepting all [well-pleaded] factual allegations in the complaint as true, and drawing all reasonable inferences in [their] favor." *Chase Grp. Alliance LLC v. N.Y.C. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir.2010) (internal quotations and citation omitted). However, even reading the present Complaint liberally and in the manner most favorable to Plaintiffs, the Court is unable to discern sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, Plaintiffs have failed to provide any "factual content that [would] allow[ ] the court to draw the reasonable inference that the defendant[s] [are] liable for [any] misconduct alleged," *Iqbal*, 556 U.S. at 678.

In the case at bar, the Complaint attempts to list certain causes of action (*e.g.*, "Negligence;" "breach of fiduciary duty;" and violations of "United Nations declaration of Indigenous People[']s Autonomy," "Truth in Lending Regulation," and "the Bank Secrecy Act"), but does not include underlying facts to make out the elements of any particular claim. As I have stated on a previous occasion in an unrelated case, "it is impossible to extract [the] claims from the 'mass of verbiage' contained in the present Complaint." *Callan v. Paulson*, No. 3:08–cv–01625 (CSH), 2009 WL 1011344, at *4 (D.Conn. April 15, 2009).

Although a *pro se* complaint must be liberally construed to raise the strongest arguments they suggest, *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.2007), "pro se parties are not excused from abiding by the Federal Rules of Civil Procedure," *Wilks v. Elizabeth Arden, Inc.*, 507 F.Supp. 2d 179, 185 (D.Conn. 2007). *Pro se* litigants "generally are required to inform themselves regarding procedural rules and to comply with them." *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir.1995). In particular, *pro se* litigants are obligated to comply with the minimal standards of

notice pleading under Rule 8, Fed. R. Civ. P.  *See, e.g., Nielsen*, 746 F.3d at 63 ("Where, as here, the complaint was filed pro se, it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, a pro se complaint must state a plausible claim for relief.") (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)); *Collins v. Blumenthal*, 581 F. Supp. 2d 289, 291 (D. Conn. 2008) ("[T]he rule in favor of liberal construction cannot save pro se litigants who do not present cognizable arguments."); *Vitale v. First Fid. Leasing Grp, Inc.*, 187 F.R.D. 445, 448 (D. Conn. 1999) ("Although pleadings filed by pro se litigants are held to less stringent standards than formal pleadings drafted by lawyers, … all litigants, including pro ses, have an obligation to comply with court orders and with the Federal Rules of Civil Procedure.") (citations and internal quotation marks omitted).  Moreover, "[d]ismissal of a complaint is proper when it is 'so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.'" *Little v. U.S. Postal Service*, No. 3:99CV887(PCD), 2002 WL 32191568, *1 (D.Conn. Jan. 18, 2002) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

Here "it is pointedly clear that the complaint at bar runs afoul of Rule 8," and "the prolixity of the pleading is greatly compounded by its vague and incomprehensible allegations."  *Lonesome v. Lebefeff*, 141 F.R.D. 397, 398 (E.D.N.Y. 1992).   It thus follows that where the Complaint is vague, ambiguous, or otherwise unintelligible, were it to be determined that the Court possesses subject matter jurisdiction, the Complaint is alternatively dismissed for failure to state any claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6).

### C.  Rule 12(b)(5) - Insufficient Service of Process

Lastly and alternatively, Defendants request that Plaintiffs' action be dismissed "due to

26

insufficiency of service of process." Fed. R. Civ. P. 12(b)(5); *Eiden v. McCarthy*, 531 F.Supp. 2d 333, 343 (D.Conn. 2008). Absent sufficient  service on a defendant, the Court may not exercise personal jurisdiction over that party, which provides "an interrelated ground on which to dismiss a case for lack of personal jurisdiction pursuant to Rule 12(b)(2)." *Carliell*, 2013 WL 4782133, at *2.

A motion to dismiss for insufficient service of process "must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to" Fed. R. Civ. P. 4. *Eiden*, 531 F.Supp. 2d at 343. Once the validity of service is challenged, the plaintiff bears the "burden to prove that service of process was adequate." *Id.* (citations omitted).

Pursuant to Rule 4(m), Fed. R. Civ. P., "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Defendants maintain that "[a]s of the date of the filing of Defendants' Motion to Dismiss – over  120 days since the Complaint was filed – Defendants have not been served with a copy of the summons and complaint." Doc. 17, p. 11.  Moreover, Defendants point out that "Plaintiffs have not filed a Proof of Service in accordance with Fed. R. Civ. P. 4(l), which mandates that "[u]nless service is waived, proof of service must be made to the Court."

Despite Defendants' three motions to dismiss, notifying Plaintiffs of their failure to effect proper service since as early as November of 2012, Plaintiffs have failed to serve Defendants and/or to provide proof of service.  Plaintiffs have neither established good cause for said failure nor sought an opportunity to effect service.  Rather, Plaintiffs have refused to even acknowledge their failure to serve Defendants, evidenced by Plaintiffs' assertion  that "the court would not have allowed the case to be filed if all parties had not been served." Doc. 25, p. 6 (Plaintiff's Opposition to Doc. 16

27

& 22).  Unless proper service is made upon the Defendants, this Court lacks jurisdiction over them.
In the absence of proper service and personal jurisdiction, "the court would normally dismiss the
complaint."  *Funches v. Conn. Dep't of Pub. Health*, No. 3:08–CV–1714 (RNC), 2010 WL 122445,
at *1 (D.Conn. Jan. 7, 2010).

    As set forth *supra,* the Courts lacks subject matter jurisdiction so that no finding is required
with respect to sufficiency of process.  As an alternative grounds for dismissal, however, the Court
will dismiss the action for insufficient service of process.  Absent proof of service or a waiver, or
any intervening circumstances to suggest additional time would result in Plaintiffs properly effecting
service, the Complaint is properly dismissed pursuant to Fed. R. Civ. P. 4 and 12(b)(5).[26]  *See, e.g.,*
*Rzayeva v. United States*, 492 F. Supp. 2d 60, 76 (D. Conn. 2007) (dismissing claims where
plaintiffs failed to meet their burden of establishing proper service).[27]

## IV.   <u>CONCLUSION</u>

    In sum, Plaintiffs' Complaint must be dismissed because this Court lacks subject matter
jurisdiction.  Despite exercising leniency toward these *pro se* litigants and accepting as true all
material allegations in the Complaint, the Court finds no legal basis to exercise subject matter

---

[26]   In the present action,  Defendants represent that they have not waived service and that
the form entitled "Requests to Waive Service of a Summons Form" that they received from Plaintiffs
was neither accompanied by the Complaint nor a prepaid means of returning that form, as mandated
by Rule 4(d), Fed. R. Civ. P.

[27]   Furthermore, "[u]nreasonable  delay in  serving process . . . may constitute a failure to
 prosecute under rule 41(b)." *Krank v. Express Funding Corp.*, 133 F.R.D. 14, 18 (S.D.N.Y. 1990).
*See also Europacific Asset Mgmt. Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 351 (S.D.N.Y. 2005)
("It is unquestioned that an 'unreasonable' delay in serving process can constitute a failure to
prosecute.") (citing *Krank*, 133 F.R.D. at 18).  An action may be dismissed pursuant to  Fed. R. Civ.
P. 41(b) for  failure of the  plaintiff to prosecute his case with diligence.

jurisdiction.  In particular, there is neither  diversity of citizenship, 28 U.S.C. § 1332(a), nor a colorable claim arising under the Constitution or federal statute, *i.e.,* no  "federal question," 28 U.S.C. § 1331.

Furthermore, were the Court to find that either basis for subject matter jurisdiction existed, the action is still barred by the Rooker-Feldman doctrine, which "directs federal courts to abstain from considering claims when . . .  (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen,* 626 F.3d at 154.  In the present action, the issues raised in Plaintiffs' complaint are inextricably intertwined with  prior state court judgments, such that their federal claim would succeed only if the state court wrongly decided the issues.  Under such circumstances, pursuant to Rooker-Feldman, the Court lacks subject matter jurisdiction to resolve Plaintiffs' requests for relief and must dismiss the action.

Defendants' alternative bases for dismissal, failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6), and insufficient service of process, Fed. R. Civ. P. 12(b)(5), also warrant dismissal.  Regarding failure to state a claim, the Court concludes, as did the state court, that no viable claims have been pled in the vague and circuitous allegations presented.  With respect to insufficient service, as of this date –  more than a year and a half after the Complaint was filed – there has been no documented proof of service of the Complaint and summons on Defendants. In light of this lack of  service of process, the Court lacks  personal jurisdiction over the Defendants.

Absent subject matter jurisdiction,  the Court lacks  power to declare the law and must simply dismiss  the case.  *Steel Co.*, 523 U.S. at 94.  However, as alternative grounds for dismissal, the

Court finds that Plaintiffs have failed to state any claims upon which relief can be granted and have failed to effect service of the Complaint and Summons on Defendants.  The Court thus alternatively dismisses Plaintiffs' actions on these grounds.

For all of the foregoing reasons, Defendants' Motions To Dismiss [Doc. 4, 16, & 22] are each GRANTED.  The action is dismissed with prejudice and the Clerk is directed to close the file.

So Ordered.

Dated: New Haven, Connecticut
         June 3, 2014

                                  /s/Charles S. Haight, Jr.
                                 CHARLES S. HAIGHT, JR.
                                 Senior United States District Judge

30